[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for a real estate commission.
On April 5, 1988, the plaintiff, a licensed real estate broker, entered into an open listing agreement with the defendants Richard M. Cmiel and David P. Schwaber doing business as Stonefield Associates. The listing agreement gave the plaintiff the right to list for sale property of the defendants located at the intersection of George Washington Road and Cornwall Road in the Town of Burlington containing 24.75 acres of land. The listing agreement ran from April 5, 1988 to September 30, 1988, and provided for a sale price of $1.5 million for a 50% interest in the land. The agreement further put a price of $3.5 million for the whole tract, "as is." The agreement further provided that the plaintiff would be paid a broker's fee of 7% of the agreed upon sales price.
Following the execution of the listing agreement, the plaintiff contacted Alan Cohn and Robert Crochetiere as possible purchasers for the Burlington property. The plaintiff took Alan Cohn and Robert Crochetiere to inspect the land. They walked the boundaries and looked at well locations. Cohn and Crochetiere wanted to meet with the sellers. A meeting was arranged CT Page 4906 by the plaintiff for April 8, 1988. At this meeting, the plaintiff was told by the sellers that the price of the land was $1.5 million plus an assumption of debt of the sellers for $350,000.00.
The plaintiff had quoted the purchase price for one-half interest in the land to Cohn and Crochetiere at $1.5 million. The plaintiff was under the impression that the price of $1.5 million included the debt. The sellers informed the plaintiff that the price of the one-half interest would be $1.5 million which would include the debt. Plaintiff passed this information on to Cohn and Crochetiere.
The plaintiff informed the sellers that her 7% commission would be on $1.5 million and not plus the debt.
An agreement was reached between the sellers and Cohn and Crochetiere on June 14, 1988. The agreement was structured so that the 24.75 acres of land was transferred from Stonefield Associates to a new partnership called Stonefield Associates II.
The partnership agreement of Stonefield Associates II consisted of Stonefield Associates (Richard M. Cmiel and David P. Schwaber as partners), and Cohn/Crochetiere Development Limited Partnership.
The partnership agreement provided that "[t]he partners agree that any brokers commission (`Brokers Commission') . . . will be borne by, and be the sole expense of Stonefield." Section 7.12 of Plaintiff's Exhibit B. The partnership agreement further provided for capital contributions from each of the partners to this agreement plus a provision for distribution of profits and allocations of expenses.
The partnership agreement provided for an initial capital contribution from Stonefield Associates of $1.2 million "representing the agreed upon fair market value of the property in excess of liabilities representing mortgages on the Property as of the date of such contribution." Plaintiff's Exhibit B. Schedule B of the partnership agreement listed mortgages encumbering the property as $358,705.00.
The initial capital contribution for Cohn/Crochetiere, pursuant to the terms of the partnership agreement, was $500,000.00 plus an additional $100,000.00 contingent upon the final resolution of a pending zoning appeal.
The partnership agreement provided for an allocation of net profits and net losses. Partnership profits were to be CT Page 4907 split 60% to Stonefield Associates, and 40% to Cohn/Crochetiere up to $4,000,000.00. Thereafter, profits were to be split 50-50.
The real estate conveyance tax statement to the Town Clerk of Burlington stated that the property transfer was not subject to a tax because no consideration was paid. See attachment to Plaintiff's Exhibit B.
A further attachment to Plaintiff's Exhibit B was a letter dated June 14, 1988 from Cohn/Crochetiere to Stonefield Associates reciting that Stonefield, having quit-claimed all of its interest in the property, agreed to be responsible for 50% of all State of Connecticut and Town of Burlington conveyance taxes which may be due.
The defendants claim that no commission is due because the plaintiff was not the procuring cause of the sale. The defendants draw a distinction between a purchase or sales agreement and the Partnership Agreement. The defendants argue that there was no sale of the land from Cmiel and Schwager dba Stonefield Associates to Cohn/Crochetiere, but rather a transfer from one partnership to another, that is Stonefield Associates to Stonefield Associates II. The defendants further contend that the Partnership Agreement did not define a "price" for the transfer, and that since there was no purchase price, there was, in fact, no contract of purchase or sale. On this basis, the defendant argue that the plaintiff could not have been a procuring cause of the deal.
The defendants further argue that since the price of the sale cannot be determined, the terms of the listing agreement must be too indefinite for the court to enforce it.
When a broker produces a purchaser who enters into an enforceable agreement with the broker's principal for the purchase of the property upon the terms laid out in the listing agreement, the broker's commission is fully earned. Francis T. Zappore Co. v. Mark, 197 Conn. 264, 267-68 (1985). See Howland v. Schweir, 7 Conn. App. 709, 713 (1986).
In the present case, the plaintiff entered into a written open listing agreement with the defendants to sell a 50% interest in 24.75 acres of land owned by the defendants. The plaintiff produced Alan Cohn and Robert Crochetiere as prospective buyers for the defendants' property. Alan Cohn and Robert Crochetiere ended up purchasing the 50% interest in defendants' property, but using a much more sophisticated arrangement than a simple purchase agreement. The vehicle Cohn and Crochetiere developed with their attorneys was a limited CT Page 4908 partnership in which the defendants would own 50% and Cohn and Crochetiere would own 50%. This limited partnership was called Stonefield Associates II.
A quit-claim deed conveyed all of the defendants interest in the property (Stonefield Associates) to an entity called Stonefield Associates II owned jointly by the defendants and Cohn and Crochetiere.
Cohn and Crochetiere for their part formed a limited partnership called Cohn/Crochetiere Development Limited Partnership consisting of a general partner entitled CCD Management Company. The president of CCD Management Company was Alan Cohn.
The partnership agreement of Stonefield Associates II and the quit-claim deed from Stonefield Associates to Stonefield Associates II were both executed on June 14, 1988. Although the conveyance tax form to the Town Clerk accompanying the quit-claim deed recited no consideration, this transaction had the practical effect of placing one-half the value of the property in the hands of Cohn and Crochetiere by virtue of their one-half interest in Stonefield Associates II.
The partnership agreement for Stonefield II provides in sections 2A.3 and 2A.5, for a 50-50 split of net profits after $4,000,000.00 of profits have been generated. The split of profits on the first $4,000,000.00 is 60% to Stonefield Associates and 40% to Cohn/Crochetiere. Cohn/Crochetiere was also expected to receive $4,166.67 per month 90 days after the closing date until zoning approval was given for the property. See Section 2A.3 of the Partnership Agreement.
A letter dated June 14, 1988 from Cohn/Crochetiere Development Limited Partnership to Stonefield Associates recited that Cohn and Crochetiere would be obligated to pay 50% of any Town of Burlington conveyance taxes and any State conveyance taxes. See Plaintiff's Exhibit B.
The defendants contend that the plaintiff has not presented evidence to establish the contract price between the buyers and sellers of the property upon which a real estate commission could be levied.
As the defendants point out, damages are an essential element of every case, and they must be proved with reasonable certainty. Braithwaite v. Lee, 125 Conn. 10, 14 (1938).
 "As a general rule, contract damages are awarded to place the injured party in the CT Page 4909 same position as he would have been in had the contract been fully performed. Bachman v. Fortuna, 145 Conn. 191, 194, 141 A.2d 477 (1958); Lee v. Harris, 85 Conn. 212, 214 82 A. 186 (1912). We recognize that `[t]here is no unbending rule as to the evidence by which such compensation is to be determined'; Bachman v. Fortuna, supra; Lee v. Harris, supra; and that damages may be `reasonable and probable estimates.' Kay Petroleum Corporation v. Piergrossi, 137 Conn. 620, 624 79 A.2d 829
(1951). But it is equally clear that damages must be based on evidence. `In the ordinary contract action the court determines the just damages from evidence offered.' Norwalk Door Closer Co. v. Eagle Lock 
Screw Co., 153 Conn. 681, 689, 220 A.2d 263
(1966)." Bertozzi v. McCarthy, 164 Conn. 463, 468, 323 A.2d 553 (1973); see Braithwaite v. Lee, 125 Conn. 10, 13-14, 2 A.2d 380 (1938). In an action at law based upon contract the court `must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount.' Bronson 
Townsend Co. v. Barristoni [Battistoni], 167 Conn. 321, 326-27, 355 A.2d 299 (1974)."
The plaintiff claims that the contract price for the purpose of determining the broker's commission, is at least the contract price of $1.5 million set forth in the listing agreement. In the alternative, the plaintiff claims that the contract price is $1,735,483.00 resulting from the payment by Cohn and Crochetiere of $500,000.00, an additional $100,000.00, the prospective profits of $800,000.00 and the assumption of one-half of the liabilities of $335,483.00. The plaintiff also suggests another determination of the contract price by taking $1,200,000.00 being the capital contribution by the defendants plus the assumption of one-half of the liabilities at $335,483.00 to total $1,535,483.00.
The partnership agreement provides for capital accounts of the partners which are to be credited with cash and the fair market value of the assets contributed to the partnership by the partners. See section 2.5.
Section 2.2 of the partnership agreement stated that the partners agreed that the fair market value of the property CT Page 4910 was $1,200,000.00 "in excess of liabilities representing mortgages on the Property as of the date of such contribution." "Property" is defined in the "Whereas" clause as "approximately 25 acres of land in Burlington, Connecticut and certain options . . . ."
Section 2A.5(e) of the Partnership agreement states that "[S]tonefield and the Partnership hereby, agree that the initial gross fair market value of the Property is $1,901,500.00." No clarification was made in the partnership agreement on what value was attributed to the land, and what value was attributed to the options.
The listing agreement dated April 5, 1988, identified as Plaintiff's Exhibit A, complies with all of the formal requirements of Conn. Gen. Stat. sec. 20-325a(b). This statute sets forth the conditions of an agreement by a real estate broker with a principal which would entitle the broker to a commission. The defendants do not contest the validity of the listing agreement.
As a general principle of law, when a real estate broker has fully performed the conditions of her listing agreement and has brought the buyer and seller to an enforceable agreement, the broker has fully performed the tasks required, and has earned a right to a commission. Francis T. Zappone Co. v. Mark, 197 Conn. 264, 267 (1985); Walsh v. Sturlick,164 Conn. 75, 80 (1972).
In this instance, the plaintiff had produced Cohn and Crochetiere who were ready, willing, and able to buy on the terms and conditions agreed to by the defendants. Id. p. 80.
The fact that Cohn and Crochetiere entered into a partnership agreement with the defendants, as a way of structuring the transaction between buyer and seller, does not detract from the result that actually occurred. The result was that the defendants sold a 50% interest in 24.75 acres of land to Cohn and Crochetiere.
The listing agreement and the partnership agreement create independent rights and duties. Revere Real Estate, Inc. v. Cerato, 186 Conn. 74, 81 (1982). Once the conditions of the real estate listing agreement have been fulfilled, the "commission, once earned, cannot thereafter be defeated by the conduct of the parties to the sales contract." Id. p. 81.
Our conclusion is that the plaintiff, having produced a buyer ready, willing and able to purchase, and who in fact did purchase a one-half interest in the 24.75 acres of land, is CT Page 4911 entitled to be paid a commission for her services.
The difficulty in resolving the amount of the commission comes from the way the purchase agreement was structured, not by the plaintiff, but by the defendants and Cohn/Crochetiere. However, the mere fact that damages are difficult to determine does not give sufficient reason not to make such a determination once the right to damages has been established. Grant v. West Haven Gardens Co., 181 Conn. 379, 388 (1980).
The defendants, as principals, cannot defeat the agent's claim for a commission when that commission is earned, simply by structuring the sale in such a way that the commission cannot be determined. See 12 Am.Jur.2d, Brokers, Sections 11, 167, pp. 851, 907.
However, a certain value should have been attributed to the options to purchase since the value of the options was included in the definition of "property" as defined in the partnership agreement.
The intent of the listing agreement between the plaintiff and the defendants was that the plaintiff would be given a commission of 7% if she procured a buyer for a one-half interest in their land. The defendants identified a value of $1,500,000.00 in the listing agreement for a one-half interest in the land. The plaintiff, relying upon the conditions set forth by the defendants in the listing agreement, acted upon those conditions and produced buyers ready, willing, and able to purchase upon the conditions set forth in the listing agreement. Under these circumstances, the defendants are estopped from claiming that the purchase price was undeterminable or something below the amount set forth in the listing agreement. The determination of value by the buyers and sellers was made to the exclusion of the plaintiff. Estoppel is available "to thwart real injustice against the plaintiff", where the defendants benefited from the action of the plaintiff, and now seek to deprive the plaintiff of those benefits because of the structure of the deal between the defendants and the purchasers produced by the plaintiff. First Connecticut Small Business Investment Co. v. Arba, Inc., 170. Conn. 168, 174 (1976).
Based upon the value of the one-half interest of the 24.75 acres to be $1,500,000.00, as contained in the listing agreement, we find that the commission due was of 7% of $1,500,000.00 resulting in a commission of $105,000.00.
The listing agreement had a provision for the plaintiff to recover attorney's fees and costs incurred in collecting any sum of money due under this agreement. See Plaintiff's CT Page 4912 Exhibit A.
The plaintiff has submitted a detailed account of a bill for attorney's fees. See Plaintiff's Exhibit E. An examination of the plaintiff's account of time appears reasonable. It is appropriate to award the plaintiff, not only the earned commission of $105,000.00, but also her attorney's fees of $20,000.00, since the listing agreement provides for the payment of attorney fees.
The commission due the plaintiff should have been paid on June 14, 1988 when the transaction between the defendants and Cohn/Crochetiere was made and funds were exchanged. In this case, the detention of the commission was wrongful and the interest lost is an element of damages. Milgrim v. Deluca,195 Conn. 191, 201 (1985). We calculate interest from June 14, 1988 to June 14, 1991 as $31,500.00.
Accordingly, judgment may enter for the plaintiff against the defendants in the amount of $156,500.00 plus costs.
ARNOLD W. ARONSON JUDGE, SUPERIOR COURT